*Not For Publication

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

The Honorable Freda L. Wolfson, U.S.D.J.

| | | |
|---|---|---|
| JOHN NODZAK, individually, and as administrator <u>ad prosequendum</u> of THE ESTATE OF KATE NODZAK., | : : : : | Civil Action No. 07-2753 |
| Plaintiff, | : : | **OPINION** |
| vs. | : : | |
| JOSHUA A. GIEHLL, SCHIFF'S FOOD SERVICE, INC. JOHN DOE AND ABC COMPANY, | : : : | |
| Defendants. | : | |

For Plaintiff:
George T. Daggert, Esq.
Daggett, Kraemer, Eliades, Kovach & Ursin, Esqs.
328 D Sparta Avenue
Sparta, New Jersey 07871

For Defendant:
Glenn A. Montgomery, Esq.
Montgomery, Chapin & Fetten, P.C.
745 Route 202/206 - Suite 101
Bridgewater, New Jersey 08807

**Wolfson, District Judge:**

Plaintiff, John Nodzak ("Plaintiff"), the father of the decedent, Kate Nodzak (the "Decedent"), commenced this wrongful death action, resulting from an automobile accident. Plaintiff seeks damages against Joshua A. Giehll and Schiff's Food Service (collectively, "Defendants") pursuant to the New Jersey Survival Act, N.J.S.A. 2A:15-3 ("Survival Act") and the New Jersey Wrongful Death Act, N.J.S.A. § 2A:31-1 ("Wrongful Death Act").  Specifically, Count Three of the Complaint seeks monetary relief for compensatory damages, punitive damages and attorney fees, under the Survival Act for the pain and agony that the Decedent lived with and suffered before dying; and Count Four seeks monetary damages for the deprivation of the services, advice, and other advantages and aid that a natural parent may expect from a child under the Wrongful Death Act. Defendants filed the instant motion for partial summary judgment with respect to these two counts.   For the reasons set forth below, Defendants' motion is DENIED, and Plaintiff's request for further discovery is also DENIED.

## BACKGROUND

The Decedent, was a twenty-seven year old woman (John Nodzack's Deposition, p. 8) who suffered from a rare disease called Trapps disease that frequently gave her high fevers and rashes; she had been a special education student in high school. (Id., p. 10 -12). At the time of her death, the Decedent had been living with her mother for a year and a half, although she had spent the majority of her life living with her father. (Id., p. 6-10). The Trapps disease made it hard for the Decedent to work, and as a result, she only had one job in her life. (Id. p. 8).  She received Social Security benefits as the source of her income. (Id.

P:9 – 10: 23 – 2). For the few months prior to her death, the Decedent contributed to her family income by paying for her own car insurance at one hundred and thirty dollars a month. (Id. P:30 2 – 15). Plaintiff testified that he did not ask her to help around the house due to the Trapps disease. (Id. P:12 – 13; 25 – 18). However, the two had a close relationship; they spoke daily, took vacations together and the Decedent helped comfort and provided support for her father while he was going through his divorce. (Id. P:41 3 – 12). On the morning of the accident, the Decedent called her father to tell him that she had been accepted to a design school in Florida and was planning to attend in July 2005. (Id. P:18 - 19 15 – 25, 1 - 2).

      The Decedent was involved in a motor vehicle accident on June 17, 2005, when Defendant Giehll struck her with his truck. (Defendants' Statement of Material Facts ("Defendants' Statement), ¶ 1.) The Decedent was operating her automobile exiting from Marksboro Delis and making a left hand turn onto State Highway 94 northbound, when her vehicle collided with Defendant Geilhll's truck traveling southbound on State Highway 94. (Id., ¶ 2; see also Plaintiff's Counter Statement of Facts ("Plaintiff's Statements"), ¶ 2. ) She died as a result of the accident. (Id., ¶3.) According to the Police Report, at approximately twelve noon on June 17, 2005, the Decedent was in the process of making a left hand turn intending to go northbound on the highway when Defendant Giehll encountered her in his lane and applied his breaks heavily. (See Official Trooper Roman Police Report). However, he was not able to stop from hitting the driver side of her car. (Id.) At that point the Decedent's car was pushed into a counter-clockwise motion onto the Northbound lane of

traffic where it impacted with the curb and came to a final rest. (Id.)[1]

The Blairstown police, fire and emergency personnel arrived to the scene of the accident first. (Trooper Roman's Deposition, P:8 8 -19; 9 3 – 15.) At approximately 12:05 pm, Trooper Roman was advised of the accident. Around 12:15 pm, Trooper Roman arrived at the scene. (Id., P:8 8 -19; 9 3 - 15.) Trooper Roman reported that from a distance he observed the decedent breathing but unconscious and not moving or making noise. (Id., P:11 – 12, L:1-25, 1-13.)  Trooper Roman further testified that the first aid squad that was on the scene also expressed to him that the Decedent was breathing.

Plaintiff was informed of the accident around 12:30 pm, and he arrived at the scene approximately an hour later, (John Nodzak's Deposition, P: 8 L: 21 – 24.), after the Decedent had been airlifted to the Newton Hospital. (Id., P:25 L:7 -9.)  The Decedent's mother, who lived close to the site of the accident, arrived at the scene of the accident before Plaintiff.  Allegedly, she witnessed her daughter being pulled from the car by the EMT. (Id., P:28, L: 1 – 7.)  According to the Plaintiff, he was informed by medical professionals that his daughter died about an hour after the accident, at Newton Hospital. (Interrogatories ¶¶

---

[1] Federal Rule of Evidence 803(8)(C) "explicitly excepts public records and reports 'resulting from an investigation made pursuant to authority granted by law,'" from exclusion under the hearsay rule, because official reports contain inherent indicia of trustworthiness. Clark v. Clabaugh, 20 F.3d 1290, 1294-95 (3d Cir. 1994)(citations omitted).  Thus, on a motion for summary judgment, the Court can rely on a police report, which was authored by the officer charged with a legal duty and authorized to conduct the investigation; it is presumed admissible under Rule 803(8)(C), including its opinions, conclusions and recommendations, unless a party demonstrates its untrustworthiness. Id.; see Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 161-70, 102 L. Ed. 2d 445, 109 S. Ct. 439 (1988) (conclusions and opinions in government reports are generally admissible).  Neither party has demonstrated, or asserted, that the police report in this matter is untrustworthy.  Accordingly, the Court shall use Officer Roman's report for additional facts regarding the accident.

5, 8.) Plaintiff had no personal knowledge of when the Decedent passed away. (Plaintiff's Statements, ¶ 5.)

## DISCUSSION

### I.  Standard of Review

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. (56)(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. Id. The burden of establishing that no "genuine issue" exists is on the party moving for summary judgment. Celotex, 477 U.S. at 330. Once the moving party satisfies this initial burden, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). To do so, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324. In other words, the non-moving party must "do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also Ridgewood Bd. of Ed. v. Stokley, 172 F.3d 238, 252 (3d Cir. 1999). A genuine issue of material fact is one that will permit a reasonable jury to return a verdict for the non-moving party. Anderson, 477 U.S. at 248. In evaluating the evidence, a court must "view the inferences to be drawn from the underlying facts in the

light most favorable to the [non-moving] party." Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002)(citations omitted).

## II.     The New Jersey Survival Act

The New Jersey Survival Act provides compensation to the administrator or estate of the decedent for the pain and suffering experienced by the decedent in the interval of time from their injury to their death. N.J.S.A § 2A:15-3. The Survival Act permits an administrator to recover damages that their intestate would have been entitled to had they survived the tortious injury. Id. New Jersey allows for recovery for pain and suffering when it can be shown that the injured person survived her injuries, however briefly. Smith v. Whitaker, 313 N.J. Super 165 (1998), aff'd, 160 N.J. 221 (1999).

Defendants rely on Smith for the proposition that Plaintiff failed to meet his burden for recovery under the Survival Act because he failed to show that the victim experienced conscious pain and suffering between the time of the injury and the Decedent's eventual death.  Defendants argue that in light of the testimony available in the record and the lack of expert testimony and medical evidence, Plaintiff cannot show that the Decedent consciously experienced any pain and suffering to recover under the Survival Act.  To support their argument, Defendants cite the testimony given by Plaintiff that the Decedent's mother did not observe the Decedent breathing or show any signs of life subsequent to the accident.  Additionally, Defendants point out that Trooper Roman did not witness the Decedent making any noise, breathing or moving when he arrived at the scene. Defendants further argue that even if the Decedent was breathing, that is insufficient to support a showing of conscious signs of life as consciousness is necessary for recovery under the

Survival Act. In response, Plaintiff contends that the record as whole does not show that the Decedent died instantly, and that determination should be a jury question.

The defect with Defendants' argument is that it assumes only one theory of recovery allowable under the Survival Act. Compensable pain and suffering damages are separate and distinct from other damages recoverable under the Act, i.e., punitive and hedonic damages. Indeed, the New Jersey Supreme Court held in Smith that an issue of consciousness is only relevant to compensatory damages. Smith, 160 N.J. at 245 (emphasis added). Even assuming Defendants' version of facts to be true (i.e., the decedent was unconscious from the tortious injury to the time of her death), Plaintiff may still recover for punitive damages without showing, that the Decedent was conscious between the time of the injury and her death. See In Re: Jacoby Airplane Crash Litigation, 2006 U.S. Dist. LEXIS 87816, at *22 (D.N.J. Dec. 4, 2006); see also Smith, 313 N.J. Super at 245. A discussion of Smith is pertinent in this context.

In Smith, a 36,000-pound tanker truck collided with a passenger vehicle with force that the truck drove over the top of car, killing the car's occupant. Smith, 160 N.J. at 226. The trial court dismissed the plaintiff's claim for pain and suffering as well as hedonic damages. Id. at 228. However, the state court allowed a claim for punitive damages to proceed. Id. The trial court's decision was subsequently appealed to the appellate court, and then to the State's Supreme Court. The issue that the Supreme Court ultimately confronted was whether a plaintiff's inability to establish conscious pain and suffering in a survival action involving instantaneous death bars a claim for punitive damages. Id. at 236. The Court held that "where all of the essential elements of a punitive damages claim are established, such a claim may be sustained without proof of pain and suffering." Id. at

245.[2]  However, "[b]eyond proof of a negligently-caused death, the assertion of a claim for punitive damages requires a plaintiff to prove by clear and convincing evidence that defendant's conduct amounted to a "deliberate act or omission with knowledge of a high degree of probability of harm and reckless indifference to the consequences."  Id. at 246 (quotations and citations omitted).

    Here, Defendants only argue that because the evidence does not show that the Decedent was conscious, Plaintiff may not recover under the Survival Act.  However, as this issue has been long resolved by the New Jersey Supreme Court, this Court will allow Plaintiff to proceed with a punitive damage claim without regard to a showing of conscious pain and suffering.  Indeed, Plaintiff has pled punitive damages under the Survival Act, and Defendants have not advanced any argument why this Court should grant summary judgment as to punitive damages.[3]   In this respect, summary judgment is denied as to Count Three.  Nevertheless, the Court's next inquiry is whether Plaintiff has presented sufficient evidence to defeat summary judgment and allow a jury to determine whether compensatory damages can be awarded.

    As discussed above, the trial court in Smith dismissed plaintiff's claim for pain and suffering as well as hedonic damages because "there is nothing in the medical reports or in

---

[2] The Supreme Court also opined that the amendments to the Punitive Damages Act, requiring an award of compensatory damages as a predicate for a punitive damages award, are inapplicable to a survival action where the decedent was killed instantly.  Id. at 245.

[3] Having reviewed the record, particularly the police report, the Court is suspect of what evidence Plaintiff could present that will meet the reckless indifference standard in order for him to be awarded punitive damages, especially when Defendants' liability in this case is highly questionable.

the observations of doctors, nurses, emergency personnel, or any of those people that would suggest that there was conscious pain and suffering." Smith, 160 N.J. at 228.[4] But a review of the Appellate Division's opinion also reveals that the plaintiff's attorney openly declared that he "couldn't produce evidence of conscious pain and suffering of the decedent." Smith, 313 N.J. Super. at 178 (quotations omitted). Moreover, the Appellate Division, in analyzing the trial judge's ruling on this issue, noted that the "[trial] judge may have somewhat over-credited the evidence when he said that, 'at least insofar as the proofs are concerned,' there was 'no question' that Mrs. Robbins 'died instantly.'" Id. at 189. While this issue was not on appeal, the Appellate Division explained that the relevant inquiry is the interval between the time of the commission of the tort and the death. Smith, 313 N.J. Super. at 186. The court further noted that the plaintiff "has the burden of proving that death was not instantaneous . . . [h]owever, the plaintiff, in carrying this burden, is favored by the presumption of continuing life until the contrary is proved." Id. at 186-87. The court clearly articulated at multiple points throughout its opinion that New Jersey recognizes "a presumption that life continues until evidence is presented sufficient to establish that death occurred at some specific time." Id. at 187. The court emphasized this point by stating that "if the decedent had 'died in . . . one-tenth of a second as a result of the tort,' [then] the instant of the tort and the instant of death 'did not occur in the same split second.'" Id. at 186 (quotations omitted).

---

[4] Plaintiff has not pled hedonic damages in the Complaint as this type of damage is separate and distinct from compensatory damages. See In re Jacoby, 2006 U.S. Dist. 87816 at 22-23; Eyoma v. Falco, 247 N.J. Super. 435, 450-51 (App. Div. 1991)("We are satisfied that loss of enjoyment of life is a separate and distinct item of damages, recoverable in a survival action . . ."). As such, the Court will not consider hedonic damages in this matter.

Here, whether or not Plaintiff can recover compensatory damages under the Survival Act is fact sensitive at this juncture, because the time of the Decedent's death cannot be conclusively established. Nothing in the record supports the contention that the Decedent was not conscious or dead at any point immediately after the allegedly tortious injury. Defendant's truck struck the Decedent's car, and then her car was pushed for a period along the road before it spun out of control until she hit a curb, and her car finally rested on the shoulder. It is undeterminable from reviewing the record whether the Decedent died instantaneously or was conscious immediately after the first impact.

Defendants use the testimony of Plaintiff and Trooper Roman to establish that the Decedent was not conscious for any period following the tortious injury.[5] Defendants argue that Plaintiff testified that he arrived at the scene of the accident seconds after she was taken away by helicopter, at which time the accident had already occurred and there were emergency personnel and police present. (See Deposition of Plaintiff, John Nodzak, p. 25: 9 – 10). Plaintiff also testified that his wife told him that she saw her daughter unconscious and not breathing from afar when the EMT was pulling her out of the car. (Id. ,P 28:3-4). However, these statements alone are insufficient to demonstrate that the Decedent was dead instantaneously. Indeed, the Decedent's mother saw her from a distance after she was in the care of the EMT; certainly, such statement cannot conclusively prove that the

---

[5] Curiously, aside from the testimony and the police report, neither party has introduced the medical evidence in this case to substantiate each of their positions. In the Court's view, Plaintiff will face a difficult trial ahead due to the lack of medical and expert testimony. While the Court has afforded Plaintiff with the presumption of life, it has not been presented with any competent evidence to show that the Decedent was conscious after the first impact with Defendants' vehicle. Absent any such evidence at trial, Plaintiff will not be able to carry his burden of proving conscious pain and suffering.

Decedent died instantaneously, nor can Plaintiff's own account of the accident be conclusive since he arrived when the Decedent was being transferred to the hospital.

Similarly, the testimony of Trooper Roman does not negate the presumption of life. Trooper Roman testified that he arrived at the scene of the accident within ten minutes of being advised of the accident and that the Blairstown police, fire and first aid were already present. Trooper Roman stated that he observed the Decedent to be unconscious, but breathing. Nothing from what Trooper Roman said can be construed to mean that the Decedent died instantaneously after the car accident. Rather, for the purpose of summary judgment, Plaintiff has satisfied his burden of proof that death was not instantaneous, thus, the Court will presume continuing of life, and "allow Plaintiffs to submit such evidence to the trier of fact for a factual determination as how much those seconds, or tenths of seconds, are worth." In Re Jacoby, 2006 U.S. Dist. LEXIS 87816 at *30.[6]

As a final note, Plaintiff requests the Court to permit him to depose members of the Blairstown Emergency Medical Personnel. The Court denies the request. The parties have already conducted discovery, and the matter was even arbitrated. However, Plaintiff subsequently filed trial de novo during the pendency of this motion. Having had the

---

[6] Neither party cited In re Jacoby. In that case, the district court confronted this precise issue of proof with respect to compensatory damages. While that court noted, and this Court agrees, that the New Jersey's approach to this issue is somewhat dubious (i.e., the plaintiff has the burden of proving a non-instantaneous death while being favored by a presumption of continuing life), the line must be drawn somewhere. Id. at *24. Ultimately, the Jacoby court found that because the plaintiffs have made no concession that they cannot produce evidence to show conscious pain and suffering of the decedents after an airplane accident, they were permitted to submit evidence to the trier of fact for a factual determination as to whether the decedent died instantaneously. Id. at *30. Here, Plaintiff also has not conceded that he cannot prove non-instantaneous death. Thus, the issue shall be preserved for a jury.

opportunity to depose the medical personnel during the discovery phase of this case, Plaintiff's request is untimely.

### III. The New Jersey Wrongful Death Act

A claim under the Wrongful Death Act, N.J.S.A. 2A:31-1 to -6, provides survivors of the decedent compensation for their loss. However, the Act limits recovery to solely pecuniary losses. Green v. Bittner, 85 N.J. 1, 12 (1980). Wrongful Death claims brought by parents for the deaths of their children provide for pecuniary recovery of loss of their child's companionship as well as advice and guidance. Green, 85 N.J. 1, 2 -3.  Loss of future financial contributions is the most common pecuniary damage recovered by attempting to replace the money the decedent would have likely contributed to their survivors. Johnson v. Dobrosky, 187 N.J. 594, 607 (2006).

The New Jersey Supreme Court also permits pecuniary recovery of companionship and advice, however, it has cautioned that that relief does not permit recovery for the emotional "pleasure which accompanies such an exchange" from one's own child.  Green, 85 N.J. at 11.  The Court explained that

> it is the loss of that kind of guidance, advice and counsel which all of us need from time to time in particular situations, for specific purposes, perhaps as an aid in making a business decision, or a decision affecting our lives generally, or even advice and guidance needed to relieve us from unremitting depression. It must be the kind of advice, guidance or counsel that could be purchased from a business adviser, a therapist, or a trained counselor, for instance. That some of us obtain the same benefit without charge from spouses, friends or children does not strip it of pecuniary value.

Id. at 14.

In this particular circumstance, Plaintiff is seeking recovery for loss of services, the advice, and other advantages and aid that a natural parent may expect from a child, and any

future financial contributions that would have been provided by the Decedent. Defendants argue that Plaintiff has failed to provide an expert to analyze the pecuniary loss under the Wrongful Death Act. In that regard, Defendants contend that Plaintiff must provide the jury with some evidentiary and logical basis for estimating a compensatory award, Huddell v. Levin, 537 F.2d 726, 734-44 (3d Cir. 1976), and that a jury award cannot be made based on mere speculation or conjunction. Russell v. City of Wildwood, 428 F.2d 1176, 1179 (3d Cir. 1970). Defendants also contend that the Decedent's lack of employment, her source of income being limited to Social Security benefits, and her lack of contribution prior to the accident, all support the conclusion that Plaintiff cannot claim any pecuniary loss due to his daughter's death. Defendants further contend that to the extent Plaintiff seeks monetary damages for loss of services, the Decedent was physically unable to provide Plaintiff with household chores; thus, Plaintiff is prohibited from recovery from the Wrongful Death Act in that respect. In sum, Defendants advance that the evidence presented by Plaintiff would only give a speculative recovery.

While Defendants are correct in stating that a jury cannot give an award based on speculation or conjunction, Defendants' argument that only an expert can provide the sufficient guidelines to assist jurors in their determination of an award is misplaced. The court in Rosario v. Union City Police Dep't, explained explicitly that:

> [I]n each case [under the Wrongful Death Act], the jury was presented with at least some guidance for their damages determination. In some cases, it was expert evidence of the market value for the services provided by the decedent. In others, it was evidence describing with specificity the type of advice, services, and companionship provided by the decedent. And in each case, the jury was given evidence of the life expectancy of the decedent at the time of his or her death.

263 F. Supp. 2d 874, 880 (D.N.J. 2003). Expert testimony is not legally required but it

does allow a jury to determine the value of the advice, guidance, and support lost.  See Id. at 881; see also McStay v. Przychocki, 10 N.J. Super. 455, 462 (App. Div. 1950); Green, 85 N.J. at 17; Brown v. Kennedy Memorial Hospital, 312 N.J. Super. 579, 593-594 (App. Div.1998).  As noted in Green:

> Who knows what the child's circumstances would be, or whether the parent would indeed become old or infirm and require such companionship, or need such advice at any time? Given the speculative quality of the inferences, it might further be questioned whether one could realistically attach an estimated pecuniary value to such services. Our answer is, even assuming no special circumstances are proven, that the nature of these cases has led our courts to allow damages even though the inferences, and the estimate of damages, are based on uncertainties. (citations omitted). When a parent dies and loss of advice, guidance and counsel is allowed to the surviving children, and when an infant child dies and loss of prospective services is allowed to the parents, the proof that suffices is the parent-child relationship and what we assume the jury can conclude from that relationship alone.

Green, 85 N.J. at 15.  The Court further noted that a claim for pecuniary injuries in a wrongful death case always involves some speculation and estimation of damages based on uncertainties. Moreover, in cases involving the wrongful death of a child, the prospective loss of care, companionship, advice, counsel and guidance may even be "somewhat more conjectural." Id. at 16. Nevertheless, if this case is tried, a jury will be able to utilize its common knowledge and experience to engage in "a rational computation of probabilities." Rowe v. N.Y. etc., Tel. Co., 66 N.J.L. 19, 22, 48 A. 523 (Sup.Ct.1901); Correia v. Sherry, 335 N.J. Super. 60, 69-70 (Law Div. 2000).  Ultimately, Plaintiff will still bear the burden to provide proof at trial that would allow the jury, without speculation, to determine an

amount for loss of companionship.  Hudell, 537 F.2d at 734-44.[7]

The Court also finds Defendants' factual contentions, relating to whether the Decedent was physically able to provide any financial, or companionship and support, to Plaintiff, open to question.  A review of the record shows that the Decedent did suffer an illness that rendered her with rashes and high fevers.  However, contrary to Defendants' assertions, Plaintiff did not testify that the Decedent was physically unable to provide any monetary or physical contributions to the household.  Rather, Plaintiff did testify that his daughter was able to do minimal household chores, and recently began paying for her own car insurance.  Additionally, Plaintiff contends that he was told by the Decedent that she had been accepted to attend design school on the day of her accident, which suggests that her future expected employment might contribute financial assistance her father.  Nevertheless, Plaintiff did not testify with specificity as to the type of program the Decedent was to pursue or what her employment opportunities would be, or if she could even perform that occupation in light of her medical issues.[8]

Moreover, Plaintiff testified that his daughter consoled him on different things.  For example, Plaintiff stated that the Decedent counseled and comforted him through his

---

[7] The Court does express some concern as to how Plaintiff will be able to provide a basis to allow the jury to quantify the companionship and advice that the Decedent has provided. Absent any expert testimony, Plaintiff will encounter difficulties during trial should that issue be decided by a jury.

[8] The Decedent's statement to her father regarding her acceptance to design school poses a hearsay issue.  At this juncture, Plaintiff has not provided other documentation or testimony to substantiate that fact.  If Plaintiff is unable to provide evidence of her acceptance, independent of the Decedent's own assertion, Plaintiff would not be able to present to the jury that aspect of her financial contribution.

separation and divorce. Based on Plaintiff's testimony, the determination of what, if any, potential contributions that the Decedent would have made to Plaintiff is a question for the jury. Accordingly, the Court shall deny Defendants motion for summary judgment to Count Four.

## **CONCLUSION**

Based on the foregoing, Defendants' Motion for Partial Summary Judgement is denied. The New Jersey courts' decision to adopt the presumption of continuing life leaves this Court no alternative but to allow Plaintiff to submit evidence to the trier of fact for a factual determination of any compensable damages and, if any, punitive damages. Likewise, the determination of damages under the Wrongful Death Act is troublesome due to a lack of expert testimony. As such, the Court continues to eye with circumspection the quantum of damages reasonably recoverable in this case.


Date: December 3, 2008                                         /s/Freda L. Wolfson
                                                               Freda L. Wolfson, U.S.D.J.